Jack STANLEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 57S00–8610–CR–940.

Supreme Court of Indiana.

Dec. 9, 1987.

Rehearing Denied Feb. 8, 1988.

Dennis D. Graft, Kendallville, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction for Involuntary Manslaughter While Committing a Battery, a Class C felony. Appellant was also determined to be an habitual offender. Appellant received a sentence of eight (8) years which was enhanced by thirty (30) years by reason of the habitual offender status.

The facts are: On June 11, 1985, appellant and his former wife, Irene Stanley, travelled from their home in Brimfield, Indiana, to Ligonier to speak with their daughter, Donita Stanley, concerning her children. When they arrived in Ligonier, the Stanleys saw Police Chief Robert Durham patrolling the street. Since the Stanleys were acquainted with Durham, they flagged him down and asked him to intercede in their behalf and talk with their daughter. This Durham did. When Durham ascended the stairs to Donita's apartment, the Stanleys stayed at the bottom of the stairs.

As the situation developed, Denzil Roberts, the decedent in this case, was in Donita's apartment. He exited the apartment and engaged appellant in an argument. In an attempt to quiet things down, Durham escorted appellant across the street and appellant seated himself on the passenger side of the pickup truck. Irene Stanley got into the driver's seat of the truck. Durham was standing by the driver's door of the truck. Roberts, who appeared to be intoxicated, also crossed the street to the truck. As Roberts approached, Irene Stanley exited the truck and was talking to Durham. Durham's back was to Roberts. Irene was facing him.

At that moment, a semi driven by Lester L. Key, Jr., was travelling south on the street at approximately twenty-four miles per hour. Key noticed the Stanley pickup truck and the person standing beside it. For that reason, he pulled to the middle of the street in order to allow maximum clearance between the vehicles and the persons. The testimony of Key was that he was watching the persons as he passed and that as the rear of his truck approached Roberts, appellant struck Roberts in the face with his fist, knocking him backwards under the rear wheels of the semi.

Durham testified that he did not see appellant strike Roberts, but that Irene screamed and he turned in time to see Roberts fall under the truck. At the time, Durham believed that Roberts had simply stumbled and fallen beneath the truck. Irene testified that Jack Stanley had exited the truck but was standing near the front right side and could not have struck Roberts.

Appellant claims the trial court erred in denying his motion for continuance based upon the failure of the State to produce the tractor and trailer involved in the accident. As early as November 12, 1985, almost three months before the trial commenced,

appellant began obtaining continuances in order to prepare for trial including the inspection of the truck involved. The State informed the court and appellant that the truck had broken down and that it was at Key's home in Wisconsin and it was not practical to transport it to Indiana. The type of truck and the manner in which it was equipped with mirrors was furnished to appellant, and in fact appellant was able to examine similar trucks with similar equipment and called witnesses, who were experienced in the operation of this type of vehicle, to testify concerning the visibility from the truck.

■ It was within the discretion of the trial court to determine the degree of compliance with appellant's motion to produce evidence. Given the facts of this case, we cannot say that the trial judge abused his discretion in determining that there had been a substantial compliance and that appellant did in fact have the information available to cross-examine Key concerning his ability to observe the victim falling under the wheels of the truck. Witnesses for appellant testified that in their opinion Key could not have seen what he testified to concerning the accident. However, Key testified emphatically as to what he did see. Thus, a question was raised for the determination of the jury as to the credibility of the witnesses. There is nothing in this record to indicate the trial court erred in requiring appellant to go to trial on February 5, 1986.

■ Appellant claims the trial court erred in sustaining the State's objection concerning the insurance premiums paid by Key. Appellant claims this information would demonstrate to the jury a possible motive for Key to fabricate his testimony. Appellant reasons that Key wanted to blame the accident on appellant in order to free himself from the possibility of an increase in his insurance premiums due to the accident. However, there is absolutely no evidence in this record to demonstrate that Key was at fault in any event. The only dispute is whether the victim fell under the wheels of the truck accidentally or whether he was struck by appellant which caused him to fall under the wheels.

The uncontradicted evidence shows that Key was proceeding at a slow rate of speed and that he pulled over as far as practical to place a maximum distance between his vehicle and the parties at the side of the road. We see no evidence in this record from which the jury could deduce that Key was in any danger of being blamed for the accident. We would further point out that the amount of insurance premiums being paid by Key would have very little significance as to the believability of Key's testimony. There is no showing in this record that Key was questioned as to whether or not his premiums had been raised due to this or any other accident.

■ If we would assume for the sake of argument that appellant's question might have led to such information, we observe that when such evidence is so marginally relevant, it is within the discretion of the trial court to determine its admissibility. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied* (1986), 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349. The trial court did not err in sustaining the State's objection.

■ Appellant claims there is insufficient evidence to support the verdict of the jury. Here appellant concedes that this Court will not reweigh the evidence but claims that because the only witness who testified that appellant struck the victim is the driver of the truck, Key's testimony is of such "incredible dubiousity" that his testimony should be excluded from consideration. He cites *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658.

The case at bar differs greatly from the Gaddis case. In Gaddis, the witness in question was "vacillating, contradictory, and uncertain." In the case at bar, Key testified very directly and remained consistent in his account under extensive cross-examination. It was within the province of the jury to weigh the conflicting evidence and to arrive at a decision. There is nothing in this record which would justify this Court invading the jury's province. There

is sufficient evidence in this record to support the verdict of the jury.

Appellant claims the trial court erred in overruling his objection to admission of State's Exhibits Nos. 11 and 12. These exhibits were introduced by the State to establish appellant's status as an habitual offender. Appellant claims the exhibits are not true and complete copies of the records and that they lack the certification by the clerk. Although appellant made no objection during the trial, he now claims the certification by the clerk is signed "Diann Bortner" with the initials "C.F." following. He now claims that since "C.F." was not identified as having the power to sign on the behalf of the clerk the certification should be held inadequate. Had appellant made such an objection at trial, it is probable that such identification would have been forthcoming. However, at this stage of the proceeding, we must assume that the certificate is valid.

■ As far as appellant's contention that the records are incomplete because they are only copies of docket sheets, we have held that certified docket sheets are admissible in an habitual offender proceeding as proof of prior convictions. *Clark v. State* (1986), Ind., 498 N.E.2d 918. There was no error in the admission of State's Exhibits Nos. 11 and 12.

Appellant claims the trial court erred in answering questions posed by the jury after they had started deliberation on the habitual offender phase of the trial. The jury asked, "In writing our verdict can we write recommendations to the judge on the sentencing?" To which the judge answered, "Yes." They also asked, "What does the judge mean that we can write our own verdict?" To which the judge answered, "Verdict based on the instructions."

■ These answers were given to the inquiries by the jury out of the presence of counsel. Appellant is correct in his observation that Ind.Code § 34-1-21-6 and the case of *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188 require that when a jury is to be re-instructed it should be done in the presence of or after notice to the parties or their attorneys. It thus was irregular for the judge to undertake to answer any question posed by the jury without such notice to or presence of the parties. To do so results in a rebuttable presumption of prejudice. *Averhart v. State* (1984), Ind., 470 N.E.2d 666. However, in *Averhart*, this Court stated that it could examine the record to determine if the conduct of the trial court did in fact prejudice the appellant.

■ In the case at bar, when we examine the questions asked and the responses given by the judge, we see that the questions did not go to the merits of the case or the manner in which they would determine such merits, nor did either answer by the trial judge give any instruction to the jury which could conceivably be determined to be detrimental to appellant. We hold the error here committed by the trial court was harmless.

■ Appellant claims his sentence of thirty-eight (38) years is excessive. For the Class C felony of Involuntary Manslaughter, the trial judge enhanced the five (5) year presumptive sentence by three (3) years making a total of eight (8) years. This was in conformity with Ind.Code § 35-50-2-6. In so doing, the Court noted appellant's behavior including theft and aggravated assault and battery involving a knife. The trial judge also noted evidence in this record that shows appellant picked up a cement block and was threatening to hit one of the persons at the scene immediately after the death of the victim in this case. We hold the findings of the trial court are sufficient to support the enhancement of appellant's sentence.

■ Appellant further claims the enhancement of his sentence by thirty (30) years by reason of his habitual offender status is excessive in view of the language in Ind.Code § 35-50-2-8(e), which holds "[i]f at least one (1) of the offenses relied upon to establish that the person has accumulated two (2) prior unrelated felonies is a Class D felony, then the court may subtract up to ten (10) years from the additional fixed term of thirty (30) years." He observed that one of his prior felonies was

in fact a Class D felony and that therefore the ten years should have been subtracted. We note the language of the statute makes such a subtraction discretionary with the trial judge.

In rendering his sentence, the trial judge stated that although it had been several years since the prior convictions that appellant had been discharged from his last sentence in January of 1985 just six months prior to the instant offense. He therefore stated he did not feel it was proper in this case to use the permissive mitigation of the habitual offender enhancement. We see no abuse of the trial court's discretion in rendering the sentence.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.